may be repaired at a small expense. She puts into a port where her owner has neither funds nor credit, and unless the repairs can be made the voyage will be broken up, and both vessel and cargo exposed to a ruinous diminution of value. In this situation the law says to the mechanic, release this vessel from her distress, save her owner from this loss, and the vessel herself, wherever she goes, shall be security for your payment. There is some generosity in the confidence thus given to strangers, because it is not without considerable hazard. The vessel may be lost; her owner may be distant or insolvent; the mechanic, nevertheless, permits her to go; and the law will not suffer such a claim to be defeated on slight grounds, but will be astute to prevent it."

But the learned proctor for the claimants in this case contends that the proviso at the close of the 1st section of the act of 1850 makes the recorded mortgage prevail over every other lien, except that created by bottomry bond. Now can this be so, and, if so, would it not be most impolitic and unjust? A materialman who repairs a vessel or furnishes supplies to her in a foreign port, without a bottomry bond, gets only the usual interest on his bill, and has to follow the vessel frequently to her home port to recover his claim; and although her owners are liable to him in personam, if the vessel is lost on the voyage he has lost his principal security. But if he refuses to furnish the supplies or to lend money to repair without a bottomry bill, he gets a heavy rate of interest, sometimes as high as thirty per cent., if the vessel reaches her home port. And a bottomry bill, too, is only valid where the supplies furnished or money loaned were necessary to enable the vessel to prosecute her voyage. Now did congress mean to draw a distinction between these two liens, and to give to the one possessing the smaller claim to our favor the greater efficacy? I think not, but that it was only intended by the act of 1850 to give recorded bills of sale or mortgages of vessels priority over every subsequent conveyance of them made by those in possession of them, and over any rights acquired in them by general creditors by judgment and execution; and that it was not intended to interfere with those liens in favor of materialmen given by the general maritime law. Such a construction of the act is in accordance with the equitable principles which prevail in the maritime law, and enter so largely into the adjudications of the admiralty courts; for all repairs and supplies to vessels in a foreign port are directly for the benefit of the mortgagee, by enabling the vessel to prosecute her voyage, and return to her home port where she can be in reach of process to enforce his lien, and, by her return, adds to the means of the mortgagor to liquidate his mortgage-debt. Entertaining these views, I will sign a decree for the claim of the libellant with interest and costs.

And as this is a new question, and twenty-six other cases now pending in this court have been entered to abide the decision of this case, I have reduced my opinion to writing, and will file it in the case.

Since preparing my opinion in this case, I have been referred to a recent decision in the district court for Massachusetts as reported in the Boston Daily Advertiser of January 11th, in which Judge Sprague decides that "liens founded on the necessities of vessels abroad are never displaced by mortgage titles." See The Granite State [Case No. 5,687].

Decree for libellant.

REEDER (POSTMASTER GENERAL v.). See Case No. 11,311.

REED TORPEDO CO. (ROBERTS v.). See Case No. 11,910.

## Case No. 11,655.
### REELER v. ROBINSON.
[2 Cranch, C. C. 220.] [1]
Circuit Court, District of Columbia. Nov. Term, 1820.

SLAVERY—IMPORTING INTO STATE—OATH—PRESUMPTION.

The lapse of nine years since the plaintiff arrived at the age of twenty one years, does not create a presumption that the oath was taken by the person who brought the plaintiff into Virginia.

This was a suit in Alexandria for freedom, grounded upon an importation, twenty four years ago, from Maryland, without the importers taking the oath required by the Virginia law.

Mr. Taylor, for defendant, contended that from the lapse of time, a presumption arises that the oath was taken. The law did not require that the oath should be reduced to writing, nor certified, nor recorded.

Mr. Hewitt, for plaintiff, contra: The plaintiff was only six years old when imported. No presumption could begin to arise against him until he was of full age, and able to sue in his own name and right. Deduct fifteen years from the twenty four, and there remain only nine years, in which he has been competent to sue for his freedom. This neglect or forbearance to assert his right is no bar to his title.

Mr. Taylor, in reply: The act of Virginia authorizes infants to sue by a justice of the peace, who upon complaint made, is bound to sue. There has been no actual disability since he came to years of discretion.

THE COURT (THRUSTON, Circuit Judge, absent) decided that the presumption did not arise under those circumstances.

REES v. The PLANET. See Case No. 11,204.

[1] [Reported by Hon. William Cranch, Chief Judge.]